IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Victoria J. Panchura,<br><br>             Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>             Defendant.<br>_____ | Civil Action No. 8:09-1014-JFA-BHH<br><br><br><br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Victoria J. Panchura, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 36 years old on the date she alleged she became disabled and 42 years old at the time of the ALJ's decision. (R. at 26, 35, 262.) She alleges she became disabled on December 17, 2002, due to amputation of her lower left leg. (R. at 50.) She has a high school education (R. at 55, 262, 269) and has past work experience as a sales clerk, night club entertainer, and janitor. (R. at 51-52, 57-79, 88-95, 264-67.)

The plaintiff filed applications for DIB and SSI on February 27, 2006. (R. at 35-39.) Her applications were denied in an initial determination. (R. at 26-30.) The plaintiff requested a hearing with an Administrative Law Judge (ALJ) (R. at 31), and a hearing was

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

held on August 27, 2008. (R. at 259-85.)[2] On September 17, 2008, in an unfavorable decision, the ALJ found that plaintiff was not disabled within the meaning of the act. (R. at 9-19.) As the Appeals Council denied the plaintiff's request for review (R. at 4-8), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant met the insured status requirements of the Social Security Act through March 30, 2005
>
> (2) The claimant has not engaged in substantial gainful activity since December 17, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> (3) The claimant has the following severe impairment: left below-the-knee amputation (20 CFR 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).
>
> (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> (7) The claimant was born on February 21, 1966, and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

---

[2] It appears that the plaintiff's applications were treated as a "prototype" for testing modifications to the disability determination process. *See* 20 CFR §§ 404.906, 416.1406 (2009). As a "prototype" case, the reconsideration stage of the administrative review was eliminated.

2

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9) Transferability of job skills is not an issue in this case because claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from December 17, 2002, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful

3

employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

4

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to find certain impairments severe; (2) improperly discounting her subjective complaints of pain; (3) failing to employ a vocational expert; and (4) failing to find that her impairments satisfied the requirements of Listing 1.05B. The Court will address each alleged error in turn.

**I.     Severe Impairments**

The plaintiff first complains that the ALJ erred in concluding that her cervical radiculopathy, carpal tunnel, and depression were not "severe" impairments. To establish a severe impairment, a claimant must provide medical evidence that her impairments significantly limit her ability to perform "basic work activities." *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 146 n.5 (1987) ("An impairment is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities"; it is Plaintiff's burden to show she has a severe impairment); 20 C.F.R § 404.1520(c). Social Security Ruling 96-3p states that the Commissioner will consider a claimant's impairment "severe" if it significantly limits his physical or mental abilities to perform basic work activities. SSR 96-3p.

The plaintiff's burden to show a severe impairment is not an exacting one, however. Although the regulatory language speaks in terms of "severity," the plaintiff need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to

5

work." SSR 85-28; *see also Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) ("[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."); *Albright v. Commissioner of Social Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999). In short, the "inquiry is a *de minimis* screening device to dispose of groundless claims." *McCrea v. Commissioner of Social Sec.*, 370 F.3d 357, 360 (3rd Cir. 2004).

The Court would generally agree with the plaintiff that the ALJ made some error in the severity determination concerning these impairments. The Court, however, was inclined to find that error harmless for the plaintiff's own failure to explain what additional disabling limitations they ostensibly posed. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error"). The principal consequence of the ALJ's failure to find certain limitations severe, however, is in the effect it has on the ALJ's ability to make recourse to the Medical Vocational Guidelines, or Grid Rules, in order to make his disability determination. Specifically, to the extent the plaintiff's depression, in fact, constitutes a "severe" impairment resulting in nonexertional limitations, previously left unconsidered, his exclusive reliance on the Grid Rules, without vocational testimony, would constitute reversible error. *See Heckler v. Campbell*, 461 U.S. 458, 461 (1983); *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989).

Grid Rules, "relieve the [Commissioner] of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy." *Heckler*, 461 U.S. at 461. The Grid Rules are utilized at step five of the sequential evaluation in determining whether jobs exist that a claimant can perform, where the claimant's "impairment(s) prevents the performance of his or her vocationally relevant past work." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00. If, however, the plaintiff has nonexertional limitations in addition to exertional limitations, the guidelines are not to be

6

treated as conclusive. *See* 20 C.F.R. § 404.1569; *Roberts v. Schweiker,* 667 F.2d 1143, 1145 (4th Cir.1981); *Pratts v. Chater*, 94 F.3d 34, 39 (2nd Cir. 1996). Non-exertional impairments include mental impairments, such as depression, affective disorder and borderline intellectual functioning. *See Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983).

The ALJ found the plaintiff's depression was "non-severe" because she "had never sought psychiatric treatment and has never been hospitalized by a mental health facility" (R. at 15.) As the plaintiff argues, these facts would not seem to answer dispositively the question of whether the plaintiff's depression is nothing more than a "groundless claim." *McCrea*, 370 F.3d at 360. The record reveals that the plaintiff has been consistently prescribed a range of antidepressant medications, including Pamelor, Celexa, Buspirone, Effexor and Lexapro, for persistent symptoms of depression related to the loss of functioning from her leg amputation and the loss of her infant daughter. (R. at 130-31, 212-16, 219.) Depression has been consistently diagnosed by both her treating physicians, Drs. Burdine and Alston. (R. at 134 212-16, 219.) She attended counseling sessions by a clinical psychologist, Dr. Curtis Vincent, through most of 2006 and had resumed weekly counseling sessions as of the time of the hearing in 2008. (R. at 168-83.) She was described as "tearful" by Dr. Burdine. (R. at 126.) Even the consultative psychologist for the State agency, Dr. Alan Taylor, noted that she had "cried on multiple occasions" during his evaluation in May 2006 and appeared then to be "significantly depressed." (R. at 145.)

The ALJ did not ignore these observations or diagnoses, however. (R. at 15.) Instead, he concluded that the depression had not produced any restrictions to the claimant's daily activities, social functioning, or other attributes and, therefore, could not be said to have had any effect on her ability perform basic work activities. This is a fairly reasonable assessment and not one actually rejoined by the plaintiff. While the plaintiff contends that the ALJ failed to consider her resulting "nonexertional limitations" (Pl. Reply at 2), the plaintiff has not actually identified any limitations created by the depression.

7

Observations by physicians that she was "tearful" or "agitated" do not inexorably correspond to actual limitations on her ability perform basic work activities. The plaintiff has not cited any evidence of how her depression actually affects her ability to work. The Court can surmise it but that would be an improper substitution of the undersigned's imagination for actual evidence. Surely, the plaintiff has reason to be depressed as between the loss of her leg and a young child (R. at 126). The Court is substantially sympathetic to it all. But, the Court is constrained largely by the rules of review and governing regulations.

In most respects, the ALJ's assessment is unassailable. The question remains, however, whether the analysis was properly performed. Specifically, when a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a); *see Johnson v. Astrue*, 2010 WL 1380148, at *2 (S.D. W. Va. March 31, 2010). The regulations expressly indicate that this technique is intended to help "[i]dentify the need for additional evidence to determine impairment severity," among other goals. 20 C.F.R. §§ 404.1520a(a)(1). This is due, in part, to the regulations explicit understanding that "assessment of functional limitations is a complex and highly individualized process that requires [the Commissioner] to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation." 20 C.F.R. § 404.1520a(c). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides the specific analysis for determining whether affective disorders, including depression, should be deemed severe.

For all its thoroughness and facial credibility, the Court does not believe the decision is as consistent with the particular demands of the special technique prescribed by the regulations or the particular predicate features of the plaintiff's depression which may reasonably have lead to real functional problems. The Court would recommend a reassessment consistent with the regulations as thoroughly summarized, in *Johnson v. Astrue*, 2010 WL 1380148, at *2, with an eye towards determining whether additional

information and evidence should be developed as to impairments which might logically be expected to follow from the types of diagnoses so plainly revealed in the record.  The error, if any, is of the slightest kind and only technically functional to justify a remand.

To the extent the plaintiff's depression is found severe, the ALJ should retain the services of a VE, insofar as the effect of nonexertional limitations on her ability to perform a full range of work must be considered.  *Heckler*, 461 U.S. at 461.

The Court would not recommend remand for this reason alone, but insofar as the matter will be reconsidered as to the plaintiff's depression, the ALJ should also give consideration to the severity of the plaintiff's cervical radiculopathy and carpal tunnel, which were not expressly considered in the original decision.

**II.     Subjective Complaints**

The plaintiff next contends that the ALJ failed to properly evaluate his subjective symptoms.  Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations.  *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996).  Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process."  *Id.* at 594.  First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* at 591 (quotation and emphasis omitted).  This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain."  *Id.* at 594.  Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated."  *Id.* at 595.  When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted.  *Id.* at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the

9

severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ." *Id.* at 593. Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lense because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

The ALJ found, at the first step, that the plaintiff suffered impairments which might reasonably be expected to produce the alleged symptoms. The ALJ, however, did not find the plaintiff's representations as to the intensity and limiting effects of her symptoms fully credible.

To that end, he first found that the plaintiff had sought a course of treatment not consistent with the severity of pain alleged. (R. at 16.) Specifically, the ALJ concluded that her overall treatment was conservative and effective in controlling her symptoms and pain. *Id.* These are appropriate considerations. *See Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (finding that ALJ did not err by considering inconsistency between the claimant's level of treatment and her claims of disabling symptoms); *Murphy v. Sullivan*, 1994 WL 677656, at *1-2 (4th Cir. December 05, 1994) (finding medication effective). In support of the ALJ's decision, the defendant emphasizes that, in January 2004, the plaintiff told a Dr. Michael Burdine that physical therapy relieved her pain and medications provided her with "some" relief. (R. at 133-34.) The following month, she reported that a Galvanic stimulator was working well and her pain was 40 percent improved. (R. at 132.) In June 2004, the plaintiff again reported that the Galvanic stimulator helped her pain. (R. at 130.) In September 2005, she reported that her pain was improved with medication, a TENS unit, ice, and heat. (R. at 119-20.) In October 2007, the plaintiff told Dr. Alston that Lyrica helped with her pain (R. at 219), and, in December 2007, she stated that it helped "significantly" (R. at 216). Two months later, she indicated that her phantom pain was "doing

ok[ay]" on Lyrica and Roxicodone.  (R. at 214.)  Finally, in July 2008, she stated that Duragesic patches "worked well." (R. at 205.)

The plaintiff responds that over a four-year period she made persistent complaints of phantom limb pain, many ranging from the eight-to-ten level on a ten-most-extreme pain scale (See R. at 107, 119, 121, 126, 128, 187, 213, 220, 221, 224, 227, 229.)  As discussed, physicians, in an effort to control her pain, prescribed a wide assortment of treatments including Lortab, Neurontin, Ultram, Roxicodone, Celebrex, Tramadol, Soma, Mobic, Duragesic patches, a Galvanic stimulator, and a TENS unit.  (R. at 107-134, 194-202.)

The Court might be inclined to view the evidence as the plaintiff has summarized it. But, it is precisely this type of reevaluation that is impermissible where the ALJ has substantial evidence supporting his conclusion. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  As the defendant recounts, there was evidence of effective and controlling treatment.  (See R. at 107, 119, 121 (confessing that medications were effective in controlling pain).)  For instance, the plaintiff also reported three-to-six level pain on a ten-point scale to Dr. Burdine. On January 9, 2004, she rated it as a three (R. at 133-34); on May 24, 2005, she rated it as a five (R. at 125); on July 19, 2005, she rated it as a six (R. at 123-24); on November 17, 2005, she rated it as a five (R. at 115-16); and, on December 29, 2005, she rated it as a four (R. at 112-14). The ALJ was entitled to credit or accept this kind of evidence as more characteristic of the plaintiff's pain during the relevant period than that evidence which the plaintiff cites.  The fact that the plaintiff might disagree or even produce conflicting evidence which might have resulted in a contrary decision is of no moment; the ALJ's findings were based on substantial evidence and the Court may not disturb them.  *See Blalock*, 483 F.2d at 775; *Millner v. Schweiker*, 725 F.2d 243, 245 (4th

Cir. 1984) ("[I]t is immaterial that eight medical witnesses disagreed with the ALJ's conclusion, provided that one such witness gave sufficient probative evidence.").

The ALJ further discounted the plaintiff's allegations of pain for want of significant clinical and laboratory abnormalities one would expect if the claimant were actually disabled. The plaintiff argues that the ALJ failed to note the persistent description of multiple clinical abnormalities on the plaintiff's stump, including swelling and shrinkage in the stump size along with recurrent ulcerations, abscesses, and limb sores in the distal tibia, patella tendon, and fibular head regions requiring constant adjustments and replacements of her prostheses and their components.  (R. at 98-105, 194-202, 205-231.)  The plaintiff also highlights eleven photographs showing the stump scars resulting from these sores and ulcerations which were submitted to him by the plaintiff's hearing counsel two weeks before the hearing, under cover letter of August 15, 2008.  Respectfully, the Court does not see how this evidence plainly supports allegations of pain or otherwise refutes the ALJ's cited evidence.  These are physical observations, which this Court is not qualified to interpret in terms of functional effect.[3]   Moreover, the ulcerations and limb sores were certainly considered by the ALJ.  (R. at 16.)

In contrast, the defendant puts forward medical evidence, in accord with the ALJ's decision (R. at 16), including the findings of Dr. Burdine.  Those records suggest inconsistency with the degree of physical symptomology and limitation that the plaintiff alleged insofar as they evidence no gross neurological, motor, or sensory deficits.  (R. at 107-34.) The ALJ also relied on the findings of Dr. Alston, which reflect some inconsistency with the degree of physical symptomology and limitation that Plaintiff alleged.  (R. at 16; see R. at 211-12, 214-21, 223-24, 226-31.)  The notes from Lyons, Inc., were likewise inconsistent with the type of severity alleged, including evidence of good progress and

---

[3] For this same reason, any suggestion by the plaintiff that reversible error exists for the ALJ's failure to view such photographs is harmless.  The Court does not find that these photographs are effective in the way the plaintiff implies.

12

satisfaction with her prosthesis. (R. at 194-202.) These were appropriate comparative observations, based on substantial evidence of record. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (ALJ could reject claimant's testimony because it was inconsistent with the objective medical evidence).

Ultimately, the ALJ offered substantial evidence for his determination that objective findings did not corroborate the plaintiff's allegations and the plaintiff has not offered evidence that demonstrates that the ALJ's consideration of that evidence was misplaced.

Lastly, the ALJ discounted the plaintiff's subjective allegations based on her range of activities and part-time work. (R. at 17.) The plaintiff contends, however, that her testimony was that she was only able to perform these activities at her own pace, stayed on her couch most of the day, was not able to vacuum or prepare food for over ten minutes at a time, and because of the effects of her narcotics took at least a half-hour nap every day. (R. at 274-279.) Whatever disagreement the plaintiff has with this particular finding or whatever error the ALJ might have made concerning it, remand would not be justified in light of the other substantial reasons and evidence supporting the ALJ's decision concerning the plaintiff's credibility, discussed above.

The plaintiff has additionally complained that, in evaluating the plaintiff's credibility, the ALJ erred by inadequately addressing the side effects of her medications, namely, that it required her to take substantial naps. The ALJ, however, specifically noted the plaintiff's subjective complaints that her medications affected her ability to focus and caused drowsiness. (R. at 15.) The ALJ specifically found that "there [was] no corroboration in the record for her testimony that her medications cause[d] drowsiness and difficulty focusing." (R. at 17.) This is an observation not seriously challenged by the plaintiff. The defendant emphasizes that the plaintiff never complained of any medicinal side effects prior to her application for benefits. This is an appropriate reason to doubt its sincerity. *See Richmond v. Shalala,* 23 F.3d 1441, 1443 (8th Cir. 1994) (although claimant complained of side effects of medications at the hearing, the court upheld the ALJ's finding that those complaints were

13

not credible because there was no medical evidence that claimant had complained to doctors about significant side effects).

For all these reasons, the ALJ's credibility determinaiton was based on substantial evidence and should not be disturbed.

### III. Listing 1.05B

Finally, the plaintiff complains that the ALJ erred in concluding that she did not have an impairment that met or equaled Listing § 1.05. A claimant is presumptively disabled when she has an impairment that meets or equals a Listing. *See* 20 C.F.R. § 404.1520(d). The Listing of Impairments, found at 20 C.F.R. Pt. 404, Subpt. P, App. 1, describes impairments considered severe enough to prevent an individual from doing any substantial gainful activity. *See* 20 C.F.R. § 404.1525(a).

Listing § 1.05 provides for presumptive disability as follows:

> 1.05 Amputation (due to any cause).
>
> . . .
>
> B. One or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00B2 to last for which have lasted or are expected 12 consecutive months;
>
> . . .

20 C.F.R Pt. 404, Subpt. P, App. 1, § 1.05.

The plaintiff's impairment does not meet or equal Listing § 1.05B because she did not experience stump complications resulting in medical inability to use a prosthetic device to ambulate effectively. The defendant has proffered substantial evidence that the plaintiff's prosthesis was satisfactory. (R. at 100, 104-05, 121-24, 130, 194-95, 201-02.)

The plaintiff's argument in this regard is not substantial. She offers treatment records from Dr. Burdine, Dr. Alston, Hanger Prosthetics and Lyon Prosthetics that show persistent complaints of phantom leg pain and stump complications, including recurrent infections, recurrent stump blisters, abscesses, pistoning within the socket, and shrinkage

14

and swelling of the stump. (R. at 98-105, 107-134, 163-167, 194-202, 256-257.) The plaintiff argues that these stump complications have resulted in persistent complaints of leg pain at the eight to ten level, especially severe upon walking and standing. (R. at 107, 119, 121, 126, 128.) Even if this evidence was fully credited, it does not establish medical inability to use a prosthetic device or otherwise discredit the cited evidence that she, in fact, could use one. Substantial evidence existed to conclude she could.

The Court is sorry for the plaintiff's condition and corresponding difficulties. That sympathy, however, may not rudder this review.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is, therefore, recommended that the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

                                                  s/Bruce H. Hendricks
                                                  BRUCE H. HENDRICKS
                                                  UNITED STATES MAGISTRATE JUDGE

May 19, 2010
Greenville, South Carolina